DEPARTMENT OF TRANSPORTATION v. JOSEPH C. McDARRIS AND WIFE, ETHEL HAYES McDARRIS; HOMER BURGESS, LESSEE

No. 8230SC506

(Filed 3 May 1983)

1. **Evidence § 48.3— failure to object to qualification of expert—absence of specific finding by court**
   Testimony in a condemnation case by respondent landowners' appraisal witness was not incompetent because the witness was never tendered as an expert nor explicitly found to be an expert where petitioner made no objection at trial to the witness's qualifications, and where the record indicates that the witness could properly have been ruled an expert and it will thus be assumed that the trial court found him to be an expert.

2. **Eminent Domain § 6.5— highway condemnation—value witness—fill material required to restore remaining property**
   In a highway condemnation action, plaintiff's appraisal witness could properly base his before and after estimates on the amount and value of fill

material required to restore the landowners' remaining property to its original relationship to the roadway after the grade of the roadway was changed by the construction project.

3. **Eminent Domain § 6.8— highway condemnation—fill agreement between contractor and owners—inadmissibility**

The trial court in a highway condemnation action properly excluded evidence offered by the condemnor concerning an agreement between the landowners and the highway contractor under which the landowners received fill material for their remaining property from the contractor at no cost since the fill agreement did not constitute a special or general benefit within the meaning of G.S. 136-112(1).

APPEAL by plaintiff from *Thornburg, Judge.* Judgment entered 30 September 1981 in Superior Court, JACKSON County. Heard in the Court of Appeals 17 March 1983.

*Attorney General Edmisten, by Assistant Attorney General Frank P. Graham, for plaintiff appellant.*

*Brown, Ward, Haynes & Griffin, P.A., by Hallett S. Ward, Jr., and Coward, Coward & Dillard, P.A., by Kent Coward, for defendant appellees.*

BECTON, Judge.

I

This is a condemnation action filed on 28 March 1978 by plaintiff, the North Carolina Department of Transportation (DOT) involving property owned by the defendants, the McDarrises. That the DOT had the authority to and did properly condemn the McDarrises' property is not questioned; rather, the DOT's appeal concerns the amount of compensation awarded and the method by which that sum was derived. The relevant facts follow.

II

The condemned property is part of two tracts owned by the McDarrises, totalling 15.03 acres, and located along U.S. highway 441 in Jackson County. Before the taking, one tract was 2.7 acres; the other, 12.33 acres. DOT needed the land for the right of way, construction, and drainage easements attendant to widening old U.S. 441 from a two-lane blacktop to a four-lane road with a center turning lane. At completion, the new thoroughfare was west of, and elevated above, the old grade. The elevation change

was nine (9) feet at its highest point and one (1) foot at its lowest point.

At the jury trial to determine the compensation issues, the McDarrises presented three witnesses, at least one of whom based his assessment on the amount of fill material necessary to restore the land to its original relationship to the roadway. DOT sought to establish, on cross-examination, that the McDarrises were not harmed by the change in elevation because the contractor, hired by DOT, gratuitously deposited fill material on the affected tracts. The McDarrises objected, and the court sustained the objection to that line of questioning. The jury awarded the McDarrises $60,000 and judgment was entered thereon.

### III

DOT brings forth four (4) assignments of error and raises three (3) arguments on appeal. For the reasons that follow, we affirm the decision of the trial court.

### A.

[1] DOT's first argument, based on its second assignment of error, poses two related questions: (i) whether the trial court erred when it allowed witnesses called by the McDarrises to give their opinions concerning the amount of damages owed the McDarrises; and (ii) what is the appropriate measure of damages. N.C. Gen. Stat. § 136-112 (1981) provides, in pertinent part:

> The following shall be the measure of damages to be followed by the commissioners, jury or judge who determines the issue of damages:
>
> (1) Where only a part of a tract is taken, the measure of damages for said taking shall be the difference between the fair market value of the entire tract immediately prior to said taking and the fair market value of the remainder immediately after said taking, with consideration being given to any special or general benefits resulting from the utilization of the part taken for highway purposes.

The McDarrises' first witness, W. B. Dillard, arrived at his damages estimate in a manner different from that set forth in G.S. § 136-112(1). Dillard based his before and after estimates on

the amount and value of fill material required to restore the McDarris property to its original relationship with the road grade. DOT concedes that that statutory formula, set forth in G.S. § 136-112(1), is mandated only for juries, commissioners and judges; and that expert real estate appraisers are not limited to any particular method of determining property values either before or after condemnation. Nevertheless, DOT argues that the admission of Dillard's testimony was error, not because he used a different measure of the injury, but because Dillard "was never tendered nor ruled as an expert." We disagree.

DOT correctly sets forth the rules concerning G.S. § 136-112 (1) in its brief. As our Supreme Court opined in *Board of Transportation v. Jones*:

> It is important to note that the statute [G.S. § 136-112(1)] speaks only to the exclusive measure of damages to be employed by the 'commissioner, jury or judge.' It in no way attempts to restrict *expert real estate appraisers* to any particular method of determining the fair market value of property. . . .

297 N.C. 436, 438, 255 S.E. 2d 185, 187 (1979).

Further, we have resolved the same issue in the negative: "[T]he real issue is whether expert real estate appraisers *must* use the before and after formula in determining damages. They do not." *Duke Power Co. v. Mom 'n' Pops Ham House, Inc., et al.,* 43 N.C. App. 308, 311, 258 S.E. 2d 815, 818 (1979). [Emphasis added.]

[2] The record also reveals, as DOT contends, that Dillard was never tendered as an expert nor explicitly found to be one by the trial court. However, the weak link in the DOT's chain of reasoning is its own failure to object, at trial, to those omissions. DOT allowed Dillard to render opinion after opinion, "expert" and otherwise, for a full twenty-nine pages of transcript before it proffered any objection to his testimony. Even when the first objection was made, it was made not to Dillard's objectionable status as an expert, but to the manner in which he arrived at the cost of restoring the properties' original relationship to grade. The applicable rule is familiar. An objection that a witness is not qualified to render the contested testimony is waived if not made

in apt time. In *Summerlin v. Railroad*, 133 N.C. 550, 45 S.E. 898 (1903), a personal injury suit involving injuries to a minor child, plaintiffs' doctor was allowed to testify at length concerning facts surrounding the child's injury. Subsequently, defendant objected, as in the case *sub judice*, to the competency of a question rather than to the witness's qualifications. The objection was overruled. Defendant then questioned the witness's competency for the first time on appeal. Justice Walker wrote:

> A party cannot be silent while a witness is testifying, as a qualified expert, to matters of opinion which are material to the controversy, and, after he has so testified, object generally to some question which may be afterwards asked him, and then make the point as to his competency for the first time in this Court. If the objection had been made in apt time, we have no doubt the judge below would have instituted the proper inquiry and found the facts as to the competency of the witness to testify as an expert, and those facts and his ruling thereon would have appeared in the case. This objection is untenable.

133 N.C. at 558, 45 S.E. at 901. *See*, 1 *Brandis on North Carolina Evidence* § 133 at 517 (2d rev. ed. 1982); *State v. Edwards and Nance*, 49 N.C. App. 547, 272 S.E. 2d 384 (1980).

Also, when, as here, the record indicates that the witness could properly be ruled an expert, it is assumed that the trial court found him to be an expert, or that his competency was admitted, or that the witness's qualifications were unchallenged at trial. *Apex Tire and Rubber Co. v. Tire Co.*, 270 N.C. 50, 153 S.E. 2d 737 (1967); 1 *Brandis, supra*, § 133.

Accordingly, we hold that W. B. Dillard's testimony on the damages to the McDarrises' property was properly admitted. It follows, then, that the measure of damages used by that witness (valuation of the fill material needed to restore the land to grade) was an appropriate one. Since, as DOT asserts, the range of valuation methods available to experts is unlimited, no basis appears upon which to deem Dillard's valuation improper. We thus find DOT's argument unpersuasive.

DOT also contends that the damage to the McDarrises' property was non-compensable. We summarily reject that argument

as both parties agreed, and the judgment denominates by its terms, that this was a *taking by eminent domain. Cf., Board of Transportation v. Warehouse Corp.*, 300 N.C. 700, 268 S.E. 2d 180 (1980) (taking incidental to enactment of valid traffic regulations, pursuant to exercise of State's *police power*, not compensable).

B.

[3] DOT, by its second and third arguments and remaining assignments of error, objects to the exclusion of testimony it sought to bring out on cross and direct examination concerning a fill agreement between the McDarrises and the road contractor. DOT sought to show that the McDarrises had obtained fill material, at no cost, from the State's contractor and that any compensable damage to the property should be offset by the special benefits attributable to the free fill material.

G.S. § 136-112(1) provides, in pertinent part, that: "[Consideration should be] given to any special or general benefits resulting from the utilization of the part taken for highway purposes." Special benefits have been defined as "those which arise from the peculiar relation of the land in question to the public improvement." [Citation omitted.] General benefits are those accruing to the public at large by reason of increased community property resulting from the project. *Kirkman v. Highway Commission*, 257 N.C. 428, 433, 126 S.E. 2d 107, 112 (1962).

The fill agreement was a private pact between the McDarrises and the contractor. It was not incidental to the road project; nor did it arise from the peculiar relationship between the tracts and the improvement at issue. As we noted in *State Highway Commission v. Mode*, a case entirely apposite to this: "There is nothing in the record to support a conclusion, or inference, that the construction of the highway gave the [landowners] the right to receive [a benefit] from the grading contractor, and it cannot therefore be said that the construction of the highway bestowed this as a special benefit." 2 N.C. App. 464, 471, 163 S.E. 2d 429, 433 (1968).

Similarly, we find that no benefit capable of being considered as a set off against compensation owed the McDarrises is present in this case. Consequently, DOT's cause was not prejudiced by the exclusion of the evidence sought to be introduced since it was, in our view, irrelevant to the compensation issue.

We find the trial below to be free of error.

No error.

Judges ARNOLD and PHILLIPS concur.