DEPARTMENT OF TRANSPORTATION, Plaintiff v. M.M. FOWLER, INC., Defendant

No. COA04-73

(Filed 3 May 2005)

**Eminent Domain— partial taking—access restricted—lost profits—admissibility**

The trial court did not err by permitting testimony about loss of profits in a case involving a partial taking for a highway. Although the condemnor is required to pay compensation only for the diminished value of the land and not for lost profits, there is an exception where access to property is restricted or denied. Evidence of lost profits is then admissible to show diminution in the value of remaining property which is rendered less fit for any use to which it has been adapted.

Appeal by plaintiff from judgment entered 8 October 2003 by Judge Robert H. Hobgood in Durham County Superior Court. Heard in the Court of Appeals 1 November 2004.

*Attorney General Roy Cooper, by Special Deputy Attorney General E. Burke Haywood and Assistant Attorney General Richard M. Graham, for the State.*

*Huston Hughes & Powell, P.A., by James H. Hughes, for defendant-appellee.*

**DEPARTMENT OF TRANSP. v. M.M. FOWLER, INC.**

[170 N.C. App. 162 (2005)]

STEELMAN, Judge.

On 6 July 1999, plaintiff, the Department of Transportation (DOT), filed its complaint and declaration of taking pursuant to its authority under Chapter 136, Article 9 of the North Carolina General Statutes. *See* N.C. Gen. Stat. § 136-103 (2004). Plaintiff sought to acquire portions of property owned by defendant and used as a gasoline service station. The subject property, which totals 47,933 square feet (1.1. acres) is located in the northeast quadrant of the intersection of Garrett Road and Chapel Hill Road in Durham County, North Carolina. The taking encompassed 13,039 square feet for a new right of way along both Garrett and Chapel Hill Roads. The taking also included slope easements totaling 1,664 square feet and a temporary construction easement totaling an additional 6,166 square feet. Plaintiff estimated the just compensation for the taking to be $166,850.00, which it deposited with the Clerk of Superior Court of Durham County.

Prior to trial, plaintiff filed a motion *in limine* to exclude from evidence numerous matters which it contended were irrelevant to the issue of just compensation, including evidence concerning loss of profits or income, loss of business, loss of goodwill, or interruption of business. The trial court allowed the motion to exclude business income until it should rule otherwise, and the case proceeded to trial. Prior to the testimony of defendant's first witness Marvin Barnes, the president of M.M. Fowler, Inc., the court revisited the issue of the admission of evidence concerning the loss of business income for the purposes of calculating just compensation. Following the *voir dire* of Barnes, the trial court reversed its earlier ruling and denied plaintiff's motion *in limine* as it related to business income. The trial judge did, however, state he would give the jury a limiting instruction taken from *Kirkman v. Highway Comm'n*, 257 N.C. 428, 126 S.E.2d 107 (1962), which it did give before Barnes testified. Barnes testified the gasoline sales had diminished by $90,000.00 since the completion of the construction. Barnes arrived at this figure by multiplying the number of gallons of gasoline sold and the amount of profit per gallon. Barnes admitted that he based his opinion of the property's fair market value after the taking solely on the loss in business income. Defendant's expert, Frank Ward, testified that he used the income approach to appraise the value of the property, in which he took into account the loss of profit in gasoline sales of $90,000.00.

The jury returned two verdicts awarding compensation to defendant as follows: (1) for the taking of the property, $375,000.00; and (2)

for the temporary construction and slope easement, $75,000.00. Plaintiff does not appeal the verdict for the temporary construction and slope easement, but does appeal the takings verdict for the permanent taking of defendant's property.

The sole issue presented on appeal is whether the trial court erred in admitting evidence concerning loss of profits.

The measure of damages for a partial taking of real property in a highway condemnation case is the "difference between the fair market value of the entire tract immediately prior to said taking and the fair market value of the remainder immediately after said taking . . . ." N.C. Gen. Stat. § 136-112(1) (2004). The general rule is that loss of profits from the operation of a business conducted on the property is not an element of recoverable damages in an award for the taking done under the authority of eminent domain. *Kirkman v. Highway Comm'n*, 257 N.C. 428, 432, 126 S.E.2d 107, 110 (1962). This is so because the "condemner is not required to pay compensation for a loss of business but only for the diminished value of land which results from the taking." *Id.* However, an exception exists to the general rule. In certain circumstances, "when the taking renders the remaining land unfit or less valuable for any use to which it is adapted, that fact is a proper item to be considered in determining whether the taking has diminished the value of the land itself." *Id.*

In *Kirkman*, the landowners operated a motel and restaurant located on a highway. The entrance to the highway was barricaded, eliminating access to the motel from the highway. The landowners brought an action to recover just compensation for the taking of their access and for damage caused the remainder of their property by reason of the taking. The landowner's appraiser testified that in arriving at his valuation of the property after the taking, he took into consideration the fact the property was less valuable for motel and restaurant purposes after the taking because there was no access to the highway, which resulted in loss of business. *Id.* at 431-32, 126 S.E.2d at 110. It was undisputed that the highest and best use of the property at the time of the taking was as a motel and restaurant. *Id.* at 432, 126 S.E.2d at 111. The property's highest and best use had been damaged as a result of the taking, rendering the remainder less valuable. *Id.* Thus, it was proper for the appraiser to testify regarding his use of loss of income in his valuation of the property after the taking. *Id.* The holding in *Kirkman* is not limited to instances where rental property is involved, as it was not a case involving rental property.

**DEPARTMENT OF TRANSP. v. M.M. FOWLER, INC.**

[170 N.C. App. 162 (2005)]

The Supreme Court held it was appropriate for the appraiser to testify to loss of profits where the limitation on the access to the property diminished the value of the remaining land. *Id.* at 432, 126 S.E.2d at 110-11. Although the general rule is that loss of profits from the operation of a business conducted on the property is not an element of recoverable damages, it follows from *Kirkman* that where the taking results in access to the property being restricted or denied, which in turn diminishes the value of the remaining property, that fact is a proper item to be considered in determining the fair market value of the property after the taking. *See id. See also Barnes v. Highway Comm'n*, 257 N.C. 507, 513, 126 S.E.2d 732, 737 (1962) (holding that the items to be considered when calculating the difference between the fair market value of the property before the taking less the fair market value after the taking includes compensation for injury to the remaining portion of property). Other cases have also permitted the introduction of lost profits to show a diminution in value of the remaining property. *See Raleigh Durham Airport Authority v. King*, 75 N.C. App. 121, 330 S.E.2d 618 (1985) (parking lot); *City of Statesville v. Cloaninger*, 106 N.C. App. 10, 415 S.E.2d 111 (1992) (dairy farm); *City of Fayetteville v. M. M. Fowler, Inc.*, 122 N.C. App. 478, 470 S.E.2d 343 (1996) (sales of gasoline at a convenience store).

We conclude that *Kirkman* creates a limited exception in cases where access to property that is being taken through eminent domain is restricted or denied. In such instances, evidence of lost profits is admissible to show diminution in the value of the remaining property where the taking renders the property less fit for any use to which it has been adapted, as well as to show the fair market value of the property after the taking.

This case is factually similar to *Kirkman*. Here, defendant took a portion of plaintiff's property in order to widen the highway, which resulted in access to the service station being limited from two entrances to one. The remaining property was rendered less valuable for the use to which it was adapted due to the limited access, resulting in a decrease in the profits from the sale of gasoline of $90,000.00. We conclude this case falls under the restricted access exception from *Kirkman*. It was proper for Barnes, as the owner of the gas station, to testify regarding the $90,000.00 reduction in gas sales in order to show damage to the remaining parcel of land. *See also Fowler,* 122 N.C. App. at 481, 470 S.E.2d at 345 (holding it was permissible for the owner of the service station to testify that the closing of one of the

entrances to the service station would dramatically lower the value of the property, as it was offered to support defendant's position that the elimination of the driveway would diminish the market value of the property). As a result, we hold that evidence regarding loss of profits was admissible to calculate the fair market value of the property after the taking.

Our holding is further supported by the fact defendant's appraiser did an economic analysis of the value of the property based on the rental value of similar property in similar locations. This indicates the traditional analysis could not be performed, therefore it was proper for the trial court to admit evidence of lost profits. The income approach is a proper method of valuation when no comparable sales data are available and a determination of the value of the land is directly attributable to the land. *Cloaninger*, 106 N.C. App. at 16, 415 S.E.2d at 115.

For the reasons discussed herein, we affirm the judgment of the trial court and conclude it did not err in permitting Barnes to testify to loss of profits or to use that amount in calculating the fair market value of the property after the taking.

NO ERROR.

Chief Judge MARTIN and Judge McCULLOUGH concur.